**Becky WALLACE, Plaintiff,**

**Annette Neal, Plaintiff–Appellee,**

v.

**DUNN CONSTRUCTION COMPANY, INC., Defendant–Appellant.**

No. 91–7406.

United States Court of Appeals, Eleventh Circuit.

Aug. 30, 1995.

376

Peyton Lacy, Thomas F. Campbell, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for appellant.

Marvin L. Stewart, Jr., Najjar, Denaburg, Meyerson, Zarzaur, Max, Wright & Schwartz, P.C., Birmingham, AL, for appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges, and GODBOLD *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In this appeal, we address the role that after-acquired evidence of an employee's fraud in a job application plays in actions brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Equal Pay Act of 1963 ("Equal Pay Act").[2] Specifically, we hold that the Supreme Court's recent decision, *McKennon v. Nashville Banner Publishing Co.*,[3] applies to cases brought under Title VII and the Equal Pay Act. We also hold that the reasoning underlying *McKennon* applies with equal force when the after-acquired evidence concerns an employee's fraud in the application process, rather than an employee's wrongful conduct during employment.

## I. *Background*

Appellee Joyce Annette Neal filed suit against Dunn Construction Company, Inc.

("Dunn"), alleging that: (1) she was not paid the same as her male coworkers,[4] in violation of the Equal Pay Act, (2) she was subject to retaliatory discharge in violation of the Equal Pay Act, (3) she was sexually harassed in violation of Title VII, and (4) she was subject to retaliatory discharge in violation of Title VII. Neal also raised Alabama state law claims for assault and battery and invasion of privacy. During one of Neal's depositions, Dunn learned that Neal had pleaded guilty to possession of marijuana and cocaine in state court in 1987. In her job application, filled out on April 13, 1988, however, Neal had answered "no" to the question, "Have you ever been convicted of a crime?"

Dunn moved for partial summary judgment on the federal claims contending, *inter alia*, that Dunn "discovered that [Neal] falsified her employment application and that she has violated company policy against convictions for drug offenses which are legitimate, non-discriminatory reasons for which she would have been terminated in any event, without regard to sex or retaliation."

The district court denied summary judgment, noting that the Eleventh Circuit had never held that after-acquired evidence bars recovery in a discrimination case. Neal and Dunn jointly filed a motion to certify the order denying Dunn's motion for partial summary judgment for an interlocutory appeal. *See* 28 U.S.C. § 1292(b). The district court granted the motion and a panel of this court granted Dunn permission to appeal.

In *Wallace v. Dunn Constr. Co.*, 968 F.2d 1174 (11th Cir.1992), a panel of this court addressed the effect of after-acquired evidence of an employee's fraud in a job application and in a split decision, affirmed the denial of summary judgment. We granted Dunn's suggestion for rehearing *en banc*, vacating the panel opinion. *Wallace v. Dunn Constr. Co.*, 32 F.3d 1489 (11th Cir.1994). During the pendency of the *en banc* proceed-

---

* Senior U.S. Circuit Judge John C. Godbold elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

1. 42 U.S.C. § 2000e *et seq.*

2. 29 U.S.C. § 206(d)(1). The Equal Pay Act is an amendment to the Fair Labor Standards Act of 1938.

3. —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

4. Neal was employed as a flag person on highway construction.

ings, the Supreme Court rendered its decision in *McKennon.*

## II. *McKennon*

In *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), a case involving an alleged violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Supreme Court held that after-acquired evidence of wrongful conduct during employment that would have resulted in termination does not "operate[ ], in every instance, to bar all relief for an earlier violation of the Act." *Id.* at ——, 115 S.Ct. at 884. The Court held, however, that "the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered." *Id.* at ——, 115 S.Ct. at 885. The Court determined that in cases in which an employee commits an act during employment that would lead to termination and the employer finds out about the act during the course of litigation, "neither reinstatement nor front pay is an appropriate remedy." *Id.* at ——, 115 S.Ct. at 886. The Court then discussed backpay, holding that it should be calculated "from the date of the unlawful discharge to the date the new information was discovered," with the court "taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party." *Id.*

Our task today is to determine the impact of *McKennon* when an employee who has falsified her job application brings a lawsuit under Title VII and the Equal Pay Act.

## III. *Title VII and The Equal Pay Act*

■ At the outset, we must determine whether the Supreme Court's decision in *McKennon* applies to actions brought pursuant to Title VII and the Equal Pay Act. The Supreme Court noted in *McKennon* that the ADEA, Title VII, and the Equal Pay Act all are "part of a wider statutory scheme to protect employees in the workplace nationwide." *Id.* at ——, 115 S.Ct. at 884. All three statutes share "a common purpose:

'the elimination of discrimination in the work place.'" *McKennon,* —— U.S. at ——, 115 S.Ct. at 884 (referring to Title VII and the ADEA) (quoting *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)); *see also Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1527 (11th Cir.1992) ("Title VII and the Equal Pay Act exist side by side in an effort to rid the workforce of gender-based discrimination."). Additionally, the ADEA and Title VII share common substantive features, and the ADEA and the Equal Pay Act share common remedial provisions. *McKennon,* —— U.S. at ——, 115 S.Ct. at 884.

Based upon the similarities among the statutes, we conclude that the holding of *McKennon* is applicable to claims brought under Title VII and the Equal Pay Act. *See O'Driscoll v. Hercules Inc.,* 52 F.3d 294 (10th Cir.1995) (remanding ADEA, Title VII and Fair Labor Standards Act claims to district court for reconsideration in light of *McKennon*); *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1153 (6th Cir.1995) ("While *McKennon* involved an ADEA claim, we are persuaded by its language that it applies equally to a Title VII claim."); *Manard v. Fort Howard Corp.,* 47 F.3d 1067, 1067 (10th Cir.1995) (applying *McKennon,* without discussion, to Title VII case).

## IV. *Fraud in a Job Application*

■ Dunn argues that *McKennon* is not applicable to this case because the petitioner in *McKennon* had committed wrongful acts during employment, whereas Neal lied on her job application. Dunn urges the conclusion that "one who obtains a job or employment contract by misrepresentation has no employment contract, no employee status and no standing to sue for alleged employment-related wrongs." We cannot agree.

■ Title VII and the Equal Pay Act, like the ADEA, serve to deter discriminatory conduct in the workplace and to compensate for injuries caused by the prohibited discrimination.[5] Each of these statutes thus "grants

---

5. *See Virgo v. Riviera Beach Ass'n,* 30 F.3d 1350, 1363 (11th Cir.1994) ("The purpose of Title VII is to 'make whole' victims of unlawful discrimi-

nation."); *Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 917 (11th Cir.1982) (discussing the deterrent purpose of Title VII); 29 U.S.C.

an injured employee a right of action to obtain the authorized relief." *McKennon,* —— U.S. at ——, 115 S.Ct. at 884; *see also* 29 U.S.C. § 216(b) (authorizing private actions under the Equal Pay Act); 29 U.S.C. § 626(c) (authorizing private actions under the ADEA); 42 U.S.C. § 2000e–5(f)(1) (authorizing private right of action under Title VII). Moreover, "[t]he private litigant who seeks redress for his or her injuries vindicates both the deterrence and the compensation objectives of the [Acts]." *McKennon,* —— U.S. at ——, 115 S.Ct. at 884.

In *McKennon,* the Supreme Court explained that these twin objectives of the ADEA would not be served if an employer were free to discriminate against an employee merely because the employer learned of that employee's wrongdoing:

> The objectives of [ADEA] are furthered when even a single employee establishes that an employer has discriminated against him or her. The disclosure through litigation of incidents or practices which violate national policies respecting nondiscrimination in the work force is itself important, for the occurrence of violations may disclose patterns of noncompliance resulting from a misappreciation of the Act's operation or entrenched resistance to its commands, either of which can be of industrywide significance.

*McKennon,* —— U.S. at ——, 115 S.Ct. at 885.

§§ 206(d)(3), 216 (providing for liquidated and compensatory damages for violation of the Equal Pay Act); *Thompson v. Commissioner of Internal Revenue,* 866 F.2d 709, 712 (4th Cir.1989) (noting that liquidated damage award under Equal Pay Act serves, in part, as "a deterrent to ensure compliance with the Act").

**6.** Our conclusion is bolstered by the Supreme Court's vacating and remanding two fraud-in-application cases for reconsideration in light of *McKennon.* *See O'Driscoll v. Hercules Inc.,* —— U.S. ——, 115 S.Ct. 1086, 130 L.Ed.2d 1056 (1995); *Harleysville Life Ins. Co. v. Mardell,* —— U.S. ——, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995).

**7.** Neal's suit was commenced prior to the passage of the Civil Rights Act of 1991. We do not consider the effect of after-acquired evidence on the remedies available under that Act, as they are unavailable to Neal. *See Curtis v. Metro Ambu-*

Likewise, the objectives of deterrence and compensation would not be served if an employee lacked standing to seek relief under these statutes because he or she misrepresented information on his or her job application. We therefore hold that the after-acquired evidence rule announced in *McKennon* applies to cases in which the after-acquired evidence concerns the employee's misrepresentations in a job application or resume, as well as cases in which the after-acquired evidence relates to employee wrongdoing during employment. *See Shattuck v. Kinetic Concepts, Inc.,* 49 F.3d 1106 (5th Cir.1995) (applying *McKennon* to case in which the employer discovered that plaintiff had lied about his education on his resume); *Ryan's Family Steak Houses, Inc.,* 49 F.3d at 1150 (applying *McKennon* to case in which employer discovered that plaintiff had lied about employment background and medical history on resume); *Hercules Inc.,* 52 F.3d at 294 (remanding fraud-in-application case for proceedings "consistent with the Supreme Court decision in *McKennon* ").[6]

### V. *Remedies*[7]

#### A.

■■■ In order to benefit from the after-acquired evidence rule announced in *McKennon,* Dunn must prove that "the misconduct revealed by the deposition was so grave that [Neal's] immediate discharge would have followed its disclosure in any event." —— U.S. at ——, 115 S.Ct. at 883.[8]

*lance Service, Inc.,* 982 F.2d 472, 473–74 (11th Cir.1993) (Civil Rights Act of 1991 does not apply retroactively).

**8.** We join the Fifth Circuit in concluding·that "the pertinent inquiry, except in refusal-to-hire cases, is whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance." *Kinetic Concepts, Inc.,* 49 F.3d at 1108.

This approach is consistent with the Supreme Court's acknowledgement that the two dates which are relevant for the purpose of calculating backpay are the date of termination and the date that the employer discovered the fraud. *See McKennon,* —— U.S. at ——, 115 S.Ct. at 886. It also recognizes that the purpose of considering the after-acquired evidence in fashioning a remedy is "to take due account of the lawful preroga-

■ Our review of the record convinces us that there is no genuine issue of material fact that Neal would have been fired when Dunn learned that Neal had lied on her job application about her prior conviction. The Employee Handbook, a copy of which Neal received when she began work, states that falsification of records is conduct for which the company will impose a penalty that may include termination. Two defense witnesses, Tina Fuller and Becky Wallace, stated at their depositions that if someone lied on a job application and Dunn found out, the person could be fired. Dunn's Accountant and Manager for Administration and its Safety Training Director submitted affidavits that Dunn would have fired Neal upon learning that she lied on her application about her drug conviction. In the face of this evidence, Neal provided only her own testimony that she thought that there was a woman who lied on her job application and kept her job. She submitted no proof that anyone who lied on the application about a drug offense was retained after Dunn learned of the misrepresentation. We therefore hold that Dunn has sufficiently demonstrated that Neal would have been fired when it learned of her misrepresentation.

### B.

■ We now set forth some general principles to assist the district court in fashioning a remedy in the event that Neal prevails on her claims under the Equal Pay Act and Title VII.[9] With respect to Neal's inadequate compensation claim,[10] the after-acquired evidence will be irrelevant to her recovery of unpaid wages or liquidated damages because a plaintiff only recovers unpaid wages for the allowable statutory period[11] and does not recover any unpaid wages or liquidated damages after termination.

■ Assuming that Neal prevails on her retaliation claim under the Equal Pay Act[12] or her Title VII claims, "neither reinstatement nor front pay [will be] an appropriate remedy" because Dunn would have fired Neal upon learning that she lied about her drug conviction. *McKennon,* —— U.S. at ——, 115 S.Ct. at 886. Injunctive relief also will not be appropriate, as Neal will no longer be employed at Dunn. *See Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982) (in the absence of reinstatement, injunctive relief is "unlikely").

■ With respect to backpay under Title VII and lost wages under the Equal Pay Act, if Neal prevails on her claims, "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." —— U.S. at ——, 115 S.Ct. at 886. The Supreme Court has also made clear that although this is the usual method for calculating damages in an after-acquired evidence case, "[i]n determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party." *Id.*

■ We also note that unless Dunn can show that it acted in good faith and with a reasonable belief that it was not violating the Equal Pay Act, Neal will be able to collect liquidated damages for her retaliation claim. *See E.E.O.C. v. White & Son Enters.,* 881 F.2d 1006, 1012 (11th Cir.1989). The after-acquired evidence is irrelevant to Dunn's mental state and thus does not bar these liquidated damages under the Equal Pay Act. The evidence is relevant for the purpose of calculating the award, as it may, as explained

tives of the employer" and not to "punish the employee." *Id.* Finally, this approach acknowledges that "[m]erely asking whether the employee would have been hired fails to recognize that an employer may retain an individual, who has performed successfully." *Shattuck,* 49 F.3d at 1109.

**9.** We stress that we express no opinion about the merits of any of Neal's claims.

**10.** *See* 29 U.S.C. § 206(d)(1).

**11.** Pursuant to the Portal-to-Portal Act, an action under the Equal Pay Act must be commenced within two years after the cause of action accrues, "except that a cause of action arising out of a willful violation may be commenced within three years." 29 U.S.C. § 255.

**12.** *See* 29 U.S.C. § 215(a)(3).

above, mandate an early end to the period of liquidated damages.

## VI. *Conclusion*

Because reinstatement, front pay, and injunctive relief are unavailable to Neal under the facts of this case, the district court erred in not granting partial summary judgment in favor of Dunn with respect to these remedies. The district court, however, correctly denied summary judgment as to backpay, unpaid wages and liquidated damages, as the after-acquired evidence does not bar recovery, but merely affects the remedy. We therefore REVERSE the district court's denial of summary judgment with respect to front pay, reinstatement, and injunctive relief, and REMAND to the district court for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.