890 So.2d 1227 (2005)
BROWN DISTRIBUTING COMPANY OF WEST PALM BEACH, a foreign corporation, Appellant,
v.
Gale L. MARCELL, Appellee.
No. 4D03-5033.
District Court of Appeal of Florida, Fourth District.
January 12, 2005.
*1228 Christine D. Hanley and Sally Still of Christine D. Hanley & Associates, P.A., West Palm Beach, for appellant.
*1229 Arthur Schofield of Arthur T. Schofield, P.A., West Palm Beach, for appellee.

ON MOTION FOR REHEARING
POLEN, J.
We deny appellee's Motion for Rehearing, but substitute the following corrected opinion for our slip opinion issued November 17, 2004.
Appellant, Brown Distributing Company, appeals a final order denying its motion to set aside verdict or alternatively motion for new trial in an age discrimination case. Brown challenges the trial court's evidentiary rulings regarding the admission and exclusion of testimony and the failure to give proposed jury instructions on after-acquired evidence and the same actor inference. We reverse and remand for a new trial for the reasons that follow.
This case arose from the termination of Appellee, Gale Marcell, 51, from employment with Brown. Brown is engaged in the business of distributing alcoholic beverages, primarily beer, throughout Palm Beach County. In June of 2000, Brown contacted an employment agency seeking to fill the position of assistant to the general manager. Brown's general manager, Gary Stumpf, met with Marcell and hired her as a temporary employee on a "temporary-to-permanent" basis, with her permanent status to be evaluated and determined after a trial period.
According to Stumpf, Marcell was below average in the performance of her tasks. The tasks with which Stumpf had particular complaints related to organization, filing, mail, and telephone calls. Stumpf had reassigned at least a minimal amount of work which Marcell would ordinarily do, to other more competent employees. When it came time to make a determination of Marcell's permanent status, Stumpf did not think she was grasping what the job was about or that she could do all the different tasks that were part of the job. Stumpf did not think she could handle the whole job and found her to be difficult to work with at times. Specifically, Stumpf complained that Marcell had a temper, and that any time Marcell received feedback, she would get defensive and "blow up."
Ultimately, Stumpf decided to fire Marcell. He gave her two-weeks notice to obtain new employment so that she would not incur any undue hardship. Stumpf left the office on a pre-planned vacation during Marcell's final two weeks. During Stumpf's absence, Marcell had an incident with Yvonne McNaughton, the Tax Audit Supervisor at the Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco. After the incident, McNaughton called Brown and requested to never have Marcell return to that agency. In response, another Brown supervisor immediately terminated Marcell one week into her two-week notice period.
Marcell, however, portrays a different story from her work experience at Brown. Marcell claims that Stumpf advised her on numerous occasions that she was doing a good job. This sentiment was corroborated by an employee at the employment agency who had also been informed by Stumpf that Marcell was performing well. Nevertheless, Marcell was informed that she was being let go and thus would not obtain permanent status. Marcell inquired as to the reason for her discharge and Stumpf allegedly replied that it was not her performance but merely that things were "just not clicking.... I need somebody that understands me better than my wife." Marcell does acknowledge the incident with McNaughton, but claims that she would not normally have behaved that *1230 way had she not just been informed that she was being fired.
Prior to trial, Brown moved in limine to exclude certain testimony about dissimilar events remote in time and unrelated to the decision-maker at issue. The trial court denied Brown's motion and admitted the testimony. The trial court did, however, grant Marcell's motion in limine to exclude evidence that she was fired because she was rude to McNaughton and that she was fired at her next job because of a poor attitude. The trial proceeded and after the close of evidence, the trial court denied Brown's proposed jury instructions on after-acquired evidence and the same actor inference. The jury ultimately found that Brown discriminated against Marcell on the basis of her age, awarding her $35,000 in lost wages and $5,000 in compensatory damages. Thereafter, Brown unsuccessfully moved to set aside the verdict and/or a new trial.
Brown first challenges the trial court's ruling which allowed Marcell to introduce testimony intended to show a history of discrimination by Brown on the basis of age. Marcell elicited testimony that, one year prior to her employment at Brown, Brown had informed other employees that they were terminated because they were too old. Marcell also introduced testimony that, three years after her employment at Brown ended, a new Brown supervisor began inquiring as to the age of prospective applicants. We are unpersuaded by Brown's classification of the challenged testimony as improper character evidence. Rather, we focus our attention on Brown's relevance argument.
"Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. However, there is a relaxed standard of relevance for discrimination cases.[1]
Proof of [ ] discrimination is always difficult. Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible. Only the very best workers are completely satisfactory, and they are not likely to be discriminated against [ ]. The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were of a different [age,] race, sex, religion, or national origin, but it has difficulty achieving this goal because it is so easy to concoct a plausible reason for not hiring, or firing, or failing to promote, or denying a pay raise to, a worker who is not superlative. A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries.

Riordan v. Kempiners, 831 F.2d 690, 697-98 (7th Cir.1987) (emphasis added).
In a disparate treatment case[2], "the central focus is less whether a pattern *1231 of discrimination existed [at the company] and more how a particular individual was treated, and why." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 n. 11 (1st Cir.1993) (citation omitted). Nevertheless, a pattern or practice of discrimination is still relevant, although it may carry less probative weight. "[S]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3rd Cir.1995). However, at trial, the statements "may provide some relevant evidence of discrimination ... and may be used to build a circumstantial case of discrimination." Id.; see Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133-34 (3rd Cir.1997).
We find that the testimony regarding Brown's explanation for the termination of other employees to be relevant and therefore properly admitted. However, we take a contrary view of the testimony that a new Brown supervisor, who was not hired by Brown until three years after Marcell was terminated, inquired as to the age of prospective applicants by requesting a copy of their driver's licenses. This testimony was too remote and lacked sufficient probative value to warrant admission. Therefore, the trial court abused its discretion in admitting this testimony.
Brown next challenges the trial court's ruling which excluded testimony that other Brown employees, who were not in Marcell's protected class, were also fired for being rude. This testimony, in conjunction with evidence of Marcell's rudeness under the "after-acquired evidence" doctrine, would have been relevant in limiting Marcell's recovery of damages. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (holding although after-acquired evidence of wrongdoing does not bar employees from all relief for discrimination, employee's own misconduct must nonetheless be considered with respect to remedies otherwise available, and, in determining appropriate remedial action, employee's wrongdoing becomes relevant to take due account of lawful prerogatives of employer in usual course of its business and corresponding equities that it has arising from employee's wrongdoing). "A subsequent untainted and independent decision can break the chain of causation of a disputed employment action made by a subordinate and therefore absolve the employer of liability." Pennington v. City of Huntsville, 261 F.3d 1262, 1270 n. 5 (11th Cir.2001).
Despite any allegedly discriminatory basis for the termination by Stumpf, if there was an ensuing legitimate justification for the termination, then Brown's damages should be calculated accordingly. Employee misconduct, especially involving a governmental regulating agency that is responsible for issuing an operating license, is more than a sufficient and justifiable independent reason to terminate employment. As such, if it can be shown that Marcell would have been fired for her rude disposition or the incident with McNaughton, entirely independent of any alleged bias of the part of Brown, then Marcell's damages should be appropriately reduced. Therefore, we find that the trial court also erred by denying Brown the ability to utilize the after-acquired evidence doctrine to limit Marcell's damages. *1232 See Pennington, 261 F.3d at 1270 n. 5; McKennon, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852.
Finally, Brown challenges the trial court's refusal to give its proposed jury instructions on after-acquired evidence and the same actor inference. "[I]t is axiomatic that each party is entitled to have the jury instructed upon [its] theory of the case." Seguin v. Hauser Motor Co., 350 So.2d 1089, 1090 (Fla. 4th DCA 1977). When a trial court excludes a proposed instruction, "in order to demonstrate reversible error, appellant must prove that the requested instructions contained an accurate statement of the law, that the facts in the case supported a giving of the instructions, and that the instructions were necessary for the jury to properly resolve the issues in the case." Davis v. Charter Mortg. Co., 385 So.2d 1173, 1174 (Fla. 4th DCA 1980); See Craig v. Sch. Bd. of Broward County, 679 So.2d 1219, 1221 (Fla. 4th DCA 1996).
We find the trial court erred by failing to give these proposed instructions. With respect to the after-acquired evidence instruction, we find the instruction to be a fair reading of the holding in McKennon and therefore appropriate as it accurately states the law and is necessary for the jury to properly resolve the issues of the case. See O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir.1996). Turning next to the proposed jury instruction on the same actor inference[3], we again find that it accurately states the law and is necessary for the jury to properly resolve the issues of the case. See Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1442-43 (11th Cir.1998). Specifically, we are unpersuaded by Marcell's argument with respect to the weight given to the inference or that the proposed instruction implies that the inference is mandatory.
We reverse the final judgment and remand for a new trial which shall be conducted consistent with this opinion.
REVERSED.
GUNTHER and STONE, JJ., concur.
NOTES
[1] The "Florida Civil Rights Act of 1992[ ] was patterned after Title VII of the Civil Rights Acts of 1964 and 1991, [ ] as well as the Age Discrimination in Employment Act (ADEA), []. Federal case law interpreting Title VII and the ADEA is applicable to cases arising under the Florida Act." Fla. State Univ. v. Sondel, 685 So.2d 923, 925 n. 1 (Fla. 1st DCA 1996); see also Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000).
[2] "A `disparate treatment' cause of action accrues `when an employer treats an employee less favorably than others because of her race, color, religion, sex, [ ] national origin,' or age." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 n. 11 (1st Cir.1993)(citing Cumpiano v. Banco Santander P.R., 902 F.2d 148, 156 (1st Cir.1990).)
[3] Brown's proposed instruction, taken verbatim from Todd J. McNamara and Alfred Southerland, Federal Employment Jury Instructions § 2:570, read as follows:

Where the same individual hired Plaintiff Gale Marcell in her temporary position and decided not to hire Plaintiff permanently and the failure to hire occurs within a relatively short time span following the temporary hire, a strong inference exists that discrimination was not a determining factor for the employer, Brown Distributing's, adverse action.