# Supreme Court of Florida

_____

No. SC16-323

_____

**IN RE: STANDARD JURY INSTRUCTIONS IN CIVIL CASES—REPORT NO. 16-01.**

[April 6, 2017]

PER CURIAM.

The Supreme Court Committee on Standard Jury Instructions in Civil Cases (Committee) has submitted proposed changes to the standard jury instructions and asks that the Court authorize the amended standard instructions for publication and use. We have jurisdiction. See art. V, § 2(a), Fla. Const.

The Committee proposes the following new instructions under new Section 417, Unlawful Discrimination, based upon the Florida Civil Rights Act (FCRA), sections 760.01-760.11, Florida Statutes (2016): 417.1 (Introduction); 417.2 (Summary of Claims and Defenses); 417.3 (Greater Weight of the Evidence); 417.4 (Discrimination—Disparate Treatment); 417.5 (Legal Cause—Discrimination); 417.6 (Legal Cause—Damage); 417.7 (Issues on Plaintiff's Claim); 417.8 (Burden of Proof on Claim); 417.9 (Unlawful Discrimination

Damages); 417.10 (Affirmative Defense—Failure to Mitigate Lost Wages); 417.11 (Affirmative Defense—After-Acquired Evidence); and 417.12 (Reduction of Damages to Present Value). Following publication by the Court, the Court received comments from the Academy of Florida Management Attorneys, April Boyer, Esq., Frank E. Brown, B.C.S., and Amanda L. Neff, Esq., the Florida Chapter of the National Employment Lawyers Association, Chris Kleppin, Esq., and Scott Wagner & Associates, P.A.

The unlawful discrimination instructions are in a format and style consistent to that approved by the Court in 2010 when the Court authorized for publication and use the reorganization of the civil jury instructions. See In re Std. Jury Instr. in Civil Cases—Report No. 09-01 (Reorganization of Civil Jury Instructions), 35 So. 3d 666 (Fla. 2010). Having considered the Committee's report, the comments filed with the Court, and the Committee's responses to the comments, we authorize the Committee's proposals for publication and use as set forth in the appendix to this opinion. New language is indicated by underlining. In authorizing the publication and use of these instructions, we express no opinion on their correctness and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instructions. We further caution all interested parties that any comments associated with the instructions reflect only the opinion of the Committee and are

not necessarily indicative of the views of this Court as to their correctness or applicability. The instructions as set forth in the appendix shall become effective when this opinion becomes final.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Original Proceeding – Supreme Court Committee on Standard Jury Instructions in Civil Cases

Rebecca Mercier Vargas, Chair, Supreme Court Committee on Standard Jury Instructions in Civil Cases, West Palm Beach, Florida; and Laura K. Whitmore, Vice Chair and Subcommittee Chair, Filing Subcommittee of the Supreme Court Committee on Standard Jury Instructions in Civil Cases, Tampa, Florida,

for Petitioner

Jennifer Daley on behalf of The Florida Chapter of the National Employment Lawyers Association, Fort Lauderdale, Florida; Chris Kleppin of Glasser & Kleppin, P.A., Plantation, Florida; Robert J. Sniffen, President, Academy of Florida Management Attorneys, Sniffen & Spellman, P.A., Tallahassee, Florida; April Boyer and Yamilet Hurtado of K & L Gates LLP, Miami, Florida; Frank E. Brown, B.C.S., and Amanda L. Neff of the Reemployment Assistance Appeals Commission, Tallahassee, Florida; and Cathleen Scott, Lindsey Wagner, Deborah S. Baker, Chelsea Bellew, and Michelle T. Murray of Scott Wagner & Associates, P.A., Jupiter, Florida,

Responding with Comments

# APPENDIX

## 417  UNLAWFUL DISCRIMINATION

**417.1**          **Introduction**
**417.2**          **Summary of Claims and Defenses**
**417.3**          **Greater Weight of the Evidence**
**417.4**          **Discrimination — Disparate Treatment**
**417.5**          **Legal Cause — Discrimination**
**417.6**          **Legal Cause — Damage**
**417.7**          **Issues on Plaintiff's Claim**
**417.8**          **Burden of Proof on Claim**
**417.9**          **Unlawful Discrimination Damages**
**417.10**        **Affirmative Defense — Failure to Mitigate Lost Wages**
**417.11**        **Affirmative Defense — After-Acquired Evidence**
**417.12**        **Reduction of Damages to Present Value**

## NOTES ON USE

The instructions in this section are based upon the Florida Civil Rights Act of 1992 (FCRA), which makes it unlawful for an employer to discriminate based upon race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status. *F.S.* 760.01–760.11.

## 417.1  INTRODUCTION

**Members of the jury, you have now heard and received all of the evidence in this case. I am now going to tell you about the rules of law that you must use in reaching your verdict. [You will recall at the beginning of the case I told you that if, at the end of the case I decided that different law applies, I would tell you so. These instructions are** (slightly) **different from what I gave you at the beginning, and it is these rules of law that you must now follow.] When I finish telling you about the rules of law, the attorneys will present their final arguments and you will then retire to decide your verdict.**

## NOTES ON USE FOR 417.1

1.      When instructing the jury before taking evidence, use instruction 202.1 in lieu of instruction 417.1. See Model Instruction 1. Instruction 417.1 is for

- 4 -

instructing the jury after the evidence has been concluded. Use the bracketed language in instruction 417.1 when the final instructions are different from the instructions given at the beginning of the case. If the instructions at the end of the case are different from those given at the beginning of the case, the committee recommends that the court point out the differences with appropriate language in the final instructions, including an explanation for the difference, such as when the court has directed a verdict on an issue.

2.      *Fla.R.Civ.P.* 1.470(b) authorizes instructing the jury during trial or before or after final argument. The timing of instructions is within the sound discretion of the trial judge, to be determined on a case-by-case basis, but the committee strongly recommends instructing the jury before final argument.

3.      Each juror must be provided with a full set of jury instructions for use during their deliberations. *Fla.R.Civ.P.* 1.470(b). The trial judge may find it useful to provide these instructions to the jurors when the judge reads the instructions in open court so that jurors can read along with the judge, as the judge reads the instructions aloud.


## 417.2  SUMMARY OF CLAIMS AND DEFENSES

**The claim[s] [and defenses] in this case [is] [are] as follows:** (claimant) **claims that** (defendant) **discriminated against [him] [her] by [discharging] [failing to hire] [**(describe discriminatory treatment)**]** (claimant) **because of** (claimant's) **[race] [color] [religion] [sex] [pregnancy] [national origin] [age] [handicap] [marital status], and that the** (describe discriminatory treatment) **caused [him] [her] damage.**

(Defendant) **denies that claim [and also claims that** (claimant) (describe any affirmative defenses)**].**

**[**(Claimant)**] [The parties] must prove [his] [her] [their] claim(s) [and defense(s)] by the greater weight of the evidence. I will now define some of the terms you will use in deciding this case.**


## 417.3  GREATER WEIGHT OF THE EVIDENCE

**"Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.**

NOTES ON USE FOR 417.3

1.      *Greater or lesser number of witnesses*. The committee recommends that no charge be given regarding the relationship (or lack of relationship) between the greater weight of the evidence and the greater or lesser number of witnesses.

2.      *Circumstantial evidence*. The committee recommends that no charge generally be given distinguishing circumstantial from direct evidence. See *Nielsen v. City of Sarasota*, 117 So. 2d 731 (Fla. 1960).

3.      *"Preponderance of evidence"* and *"burden of proof."* The committee recommends that no charge be given using these terms, which are considered not helpful to a jury and not necessary in a charge that otherwise defines "greater weight of the evidence" and instructs the jury on the consequences of its determining that the greater weight of the evidence supports or does not support the claim or defense of a party.

## 417.4  DISCRIMINATION — DISPARATE TREATMENT

**To "discriminate" means to treat an [employee] [applicant] differently with regard to compensation, terms, conditions, or privileges of employment because of the [employee's] [applicant's] [race] [color] [religion] [sex] [pregnancy] [national origin] [age] [handicap] [marital status].**

NOTES ON USE FOR 417.4

1.      This instruction is for disparate treatment claims, as opposed to hostile environment, pattern and practice, or disparate impact claims. See, *e.g.*, *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000) (explaining differences among disparate treatment, pattern and practice, and disparate impact claims of discrimination).

2.      This instruction is based upon *F.S.* 760.10(1), which makes it an unlawful employment practice for an employer "(a) [t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment" or "(b) [t]o limit, segregate, or classify employees or applicants for employment in

any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee" when those employment practices taken are "because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." This instruction can be modified to reflect the particular type of discriminatory treatment at issue.

## 417.5  LEGAL CAUSE — DISCRIMINATION

(Claimant's) **[race] [color] [religion] [sex] [pregnancy] [national origin] [age] [handicap] [marital status] is the legal cause of** (defendant's) **decision to [discharge] [fail to hire] [**(describe discriminatory treatment)**]** (claimant) **if** (defendant) **made the decision because of** (claimant's) **[race] [color] [religion] [sex] [pregnancy] [national origin] [age] [handicap] [marital status].**

(If necessary, clarify the causation standard further.)

NOTES ON USE FOR 417.5

1.      This instruction uses "because of," the causation language in *F.S.* 760.10(1). The committee takes no position on whether additional clarification is needed. We note that "because of" in employment statutes has been interpreted to mean numerous types of causation. See generally, "Gross Disunity," 114 Penn. State L. Rev. 857 (2010) ("because of" can mean at least four different types of causation). Courts have focused on three possible meanings: "sole," "but for," and "motivating factor." If an additional instruction is needed, it may vary depending on which protected factor is involved, as explained below.

2.      *Race, color, religion, sex, national origin*. No Florida appellate court has stated which causation standard should be used for a Florida Civil Rights Act ("FCRA") discrimination claim based on one of the five factors enumerated in Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Florida courts have endorsed the general rule that, because the FCRA was patterned after Title VII, the Florida statute should be given the same construction as the federal courts give the federal act. See, *e.g.*, *Carsillo v. City of Lake Worth*, 995 So. 2d 1118, 1119 (Fla. 4th DCA 2008). In 1991, Congress added the "motivating factor" causation standard to Title VII and added a "same decision" defense limiting damages. The Florida legislature never amended the FCRA to add the "motivating factor" causation standard and the "same decision" defense limiting damages.

3.     *Pregnancy*. Title VII does not include "pregnancy" as a specifically enumerated factor.  However, Title VII, as amended by the Pregnancy Discrimination Act, defines "[t]he terms 'because of sex' or 'on the basis of sex'" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k). "Under Title VII, a plaintiff may prevail on a [pregnancy discrimination] claim by showing that her pregnancy 'was a motivating factor' for an employment decision." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-2(m)); *Torres-Skair v. Medco Health Solutions, Inc.*, 595 Fed. Appx. 847, 852 (11th Cir. 2014) (same).

The Florida Legislature amended the FCRA to include pregnancy as a specifically enumerated factor, effective July 1, 2015. *F.S.* 760.10; Laws 2015, c. 2015-68, § 6. Prior to that amendment, the Florida Supreme Court held that the FCRA's prescription against discrimination because of "sex" includes discrimination based on pregnancy. *Delva v. Continental Group, Inc.*, 137 So. 3d 371, 375 (Fla. 2014). No Florida appellate court has stated which causation standard should be used for an FCRA discrimination claim based on pregnancy. However, the "motivating factor" causation standard has been utilized in pregnancy discrimination claims brought concurrently under the FCRA and Title VII.  See, *e.g.*, *Gee*, 677 F.3d at 1054–1055, 1058–1059, 1062–1063 (noting that decisions construing Title VII guide the analysis of the plaintiff-employee's pregnancy discrimination claim under the FCRA); *Torres-Skair*, 595 Fed. Appx. at 852–853.

4.     *Age*. Courts have held that decisions construing the federal Age Discrimination in Employment Act (ADEA) apply to the FCRA's age discrimination provision. See, *e.g.*, *Fla. State Univ. v. Sondel*, 685 So. 2d 923 (Fla. 1st DCA 1996). The U.S. Supreme Court interpreted the ADEA to require "but for" causation. *Gross v. FFL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

5.     *Handicap*. Courts have held that decisions construing the federal Americans with Disabilities Act (ADA) apply to FCRA's handicap discrimination provision. See, *e.g.*, *Byrd v. BT Foods, Inc.*, 26 So. 3d 600 (Fla. 4th DCA 2010). There is a split among the federal circuits as to whether the ADA requires "motivating factor" or "but for" causation. Compare *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) ("motivating factor"), with *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012) ("but for").

6.     *Marital Status*. Marital status discrimination cases decided under the FCRA do not provide clear guidance on the causation standard to be applied. See *Sanders v. Mayor's Jewelers, Inc.*, 942 F. Supp. 571 (S.D. Fla. 1996) (holding that

complaint alleging "discriminatory intent" or marital status "as motivating factor" was sufficient to state a claim); *Nat'l Indus., Inc. v. Comm'n on Human Relations*, 527 So. 2d 894 (Fla. 5th DCA 1988) (holding that, because no record of the hearing was provided, the agency could not reject the hearing officer's finding that marital status was not "a motivating factor" and that no "discriminatory intent" was present).

The Florida Supreme Court has held that the term "marital status," as used in the FCRA section prohibiting discrimination based on marital status, "means the state of being married, single, divorced, widowed or separated, and does not include the specific identity or actions of an individual's spouse." *Donato v. American Tel. & Tel. Co.*, 767 So. 2d 1146, 1154–1155 (Fla. 2000).

7.      The committee takes no position as to whether a trial court should instruct on a permissive inference of pretext, that is, the employer's stated reason for the adverse employment action was not the real reason but was given to hide a discriminatory reason.  No Florida appellate decision has addressed the issue in a trial context.  At least one Florida appellate decision has employed the pretext consideration in the context of a summary judgment motion. See generally *Feizi v. Dep't of Mgmt. Servs.*, 988 So. 2d 1192 (Fla. 1st DCA 2008) (reversing summary judgment where evidence was susceptible to a reasonable inference that the explanation offered by the defendant for eliminating plaintiff's job was pretextual). There is disagreement among the federal circuits as to whether a pretext instruction is required in employment discrimination cases under Title VII. See *Ratliff v. City of Gainesville*, 256 F.3d 355 (5th Cir. 2001) (error not to give pretext inference instruction), with *Palmer v. Bd. of Regents*, 208 F.3d 969 (11th Cir. 2000) (no error in refusing to instruct jury that it could infer discrimination if it believed plaintiff's prima facie case and disbelieved defendant's reason for adverse employment action).

8.      *Cat's Paw*.  There is an additional theory of causation in federal discrimination cases referred to as the "cat's paw."  This theory recognizes that, in certain situations, a biased supervisor's discriminatory animus may be the cause of the adverse employment action even though the actual decision-maker did not possess that discriminatory animus.  See *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011); *Fla. Dep't of Children & Families v. Shapiro*, 68 So. 3d 298, 306 (Fla. 4th DCA 2011).  If the cat's paw theory of causation applies, additional instructions may be necessary.  See, *e.g.*, Eleventh Circuit Pattern Jury Instruction 4.5.

9.      *Same Actor Inference*.  The law recognizes a permissible inference that discriminatory animus was not the cause of an adverse employment action

when the person who hired the claimant is the same person who made the decision to take the adverse employment action.  See *Brown Distributing Co. of West Palm Beach v. Marcell*, 890 So. 2d 1227, 1232 (Fla. 4th DCA 2005); see also *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1442–43 (11th Cir. 1998).  A Florida appellate court has held it is reversible error to refuse to give an instruction on the "same actor" inference when it has been requested and applies to the circumstances of the case.  See, *e.g.*, *Brown Distributing Co.*, 890 So. 2d at 1232.  Additional instructions may thus be necessary based on the circumstances of a particular case.

## 417.6  LEGAL CAUSE — DAMAGE

**The [discharge] [failure to hire] [**(describe discriminatory treatment alleged)**] is the legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the [discharge] [failure to hire] [**(describe discriminatory treatment)**], the [loss] [injury] [or] [damage] would not have occurred.**

NOTE ON USE FOR 417.6

This instruction is based upon *F.S.* 760.10(1).

## 417.7  ISSUES ON PLAINTIFF'S CLAIM

**The issues you must decide on the claim of** (claimant) **against** (defendant) **are whether** (defendant) **discriminated against** (claimant) **by [discharging] [failing to hire] [**(describe discriminatory treatment alleged)**]** (claimant) **because of** (claimant's) **[race] [color] [religion] [sex] [pregnancy] [national origin] [age] [handicap] [marital status] and, if so, whether the [discharge] [failure to hire] [**(describe discriminatory treatment)**] was a legal cause of [loss] [injury] or [damage] to** (claimant)**.**

NOTE ON USE FOR 417.7

This instruction is based upon *F.S.* 760.10(1).

## 417.8  BURDEN OF PROOF ON CLAIM

- 10 -

**If the greater weight of the evidence does not support the claim of** (claimant)**, then your verdict should be for** (defendant)**.**

**However, if the greater weight of the evidence supports the claim of** (claimant)**, [then your verdict should be for** (claimant) **and against** (defendant)**] [then you shall consider the defense[s] raised by** (defendant)**].**

**[If the greater weight of the evidence supports the defense, your verdict should be for** (defendant)**. However, if the greater weight of the evidence does not support the defense, your verdict should be for** (claimant) **and against** (defendant)**.]**

## 417.9  UNLAWFUL DISCRIMINATION DAMAGES

**If you find for** (defendant)**, you will not consider the matter of damages. But if you find for** (claimant)**, you should award** (claimant) **an amount of money that the greater weight of the evidence shows will fairly and adequately compensate [him] [her] for such damage, including any such damage as** (claimant) **is reasonably certain to incur in the future. You shall consider the following elements of damages:**

**[any] [the difference between] lost wages and benefits to the date of trial [and what** (claimant) **earned during that time].**

**[any mental anguish] [loss of dignity] and [**(describe other intangible injuries)**] experienced in the past or to be experienced in the future. There is no exact standard for measuring such damages. The amount should be fair and just in the light of the evidence.**

**[any punitive damages warranted.]** (insert applicable punitive damages instruction)**.**

NOTES ON USE FOR 417.9

1.      *Lost wages and benefits*. The court may issue an order "providing affirmative relief from the effects of the discriminatory practice, including back pay." *F.S.* 760.11(5).  Under Florida law, back pay is a legal remedy decided by the jury, and front pay is an equitable remedy that does not include a right to jury determination. *O'Neal v. Fla. A&M Univ.*, 989 So. 2d 6 (Fla. 1st DCA 2008) (decided under Florida's Whistle-blower's Act). Some federal courts submit front

- 11 -

pay issues to the jury for an advisory verdict.  See, *e.g.*, *Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1438 (11th Cir. 1991); *Hudson v. Chertoff*, 473 F. Supp. 2d 1279 (S.D. Fla. 2007); *Hill v. Xerox Corp.*, 998 F. Supp. 1378, 1385 n. 9 (N.D. Fla. 1998); *Quitto v. Bay Colony Golf Club, Inc.*, 2007 WL 4098847, *1–2 (M.D. Fla. 2007). The Committee takes no position on instructing the jury to determine front pay or on the use of an advisory verdict.

2.     *Compensatory Damages*. The court may award "compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and other intangible injuries…." *F.S.* 760.11(5).  Examples of "other intangible injuries" for which damages have been awarded under the FCRA include "emotional distress," *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348–49 (11th Cir. 2000); "emotional injury," *City of Hollywood v. Hogan*, 986 So. 2d 634, 649–50 (4th DCA 2008); "humiliation and embarrassment," *Melluzzo v. Pub. Advocate*, 2006 WL 5159197, at *3 (M.D. Fla. 2006); "pain and suffering" and "loss of capacity for enjoyment of life experienced in the past or to be experienced in the future," *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1060 n.7 (S.D. Fla.1995), *aff'd* 119 F.3d 10 (11th Cir. 1997).

3.     *Punitive Damages*. The court may award punitive damages not to exceed $100,000. *F.S.* 760.11(5). Pending further development of the law, the committee takes no position as to whether the Florida standard or the heightened federal standard for holding an employer vicariously liable for punitive damages for the conduct of its employee should apply. See *Speedway SuperAmerica, LLC v. DuPont*, 933 So. 2d 75 (Fla. 5th DCA 2006) (certifying the question of whether the state or federal standard applies), *review dismissed* 955 So. 2d 533 (Fla. 2007).

"Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999).  However, "it is not clear what the standard is for punitive damages awarded under section 760.10," *DuPont*, 933 So. 2d at 89, and the committee takes no position as to the standard for determining whether punitive damages are warranted. The FCRA, unlike Title VII, "simply provides that punitive damages may be awarded," without any express requirement as to what action is appropriate for punitive damage. *Id.* at 89–90.

Some federal courts have applied Title VII's punitive damages standard to claims for punitive damages under the FCRA.  See, *e.g.*, *Hipp v. Liberty Nat. Life Ins. Co.*, 65 F. Supp. 2d 1314 (M.D. Fla. 1999), *aff'd in part, rev'd in part on other*

- 12 -

*grounds* 252 F.3d 1208 (11th Cir. 2001). "To recover punitive damages under Title VII, a plaintiff must prove that defendant has 'engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp. 2d 1303, 1319 (S.D. Fla. 2004) (quoting 42 U.S.C. § 1981a(b)(1)). "Malice or reckless indifference is shown when the employer knowingly violates federal law…." *Id.* at 1319–1320 (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999)). "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 535; *Richardson*, 334 F. Supp. 2d at 1320.


## 417.10  AFFIRMATIVE DEFENSE — FAILURE TO MITIGATE LOST WAGES

**[As a defense to** (claimant's) **damages claim for lost wages and benefits,** (defendant) **claims that** (claimant) **could have reduced [his] [her] damages by making a reasonable effort to [seek] [retain] comparable employment. Comparable employment means alternative employment similar to** (claimant's) **former job in the nature of the work, responsibilities and skills required.** (Claimant) **need not accept employment that is unsuitable or demeaning when compared with** (claimant's) **former job.**

**If the greater weight of the evidence supports** (defendant's) **claim that there was comparable employment available to** (claimant) **and that** (claimant) **failed to make a reasonable effort to [seek] [retain] such employment, then you should reduce any lost wages and benefits you award to** (claimant) **by the amount that** (claimant) **could have earned from the comparable employment.**

**If, however, the greater weight of the evidence does not support** (defendant's) **claim that there was comparable employment available to** (claimant) **and that** (claimant) **failed to make a reasonable effort to [seek] [retain] that employment, then your verdict should be for** (claimant) **in the total amount of [his] [her] damages for lost wages and benefits.]**

NOTES ON USE FOR 417.10

1.      This instruction is given only if the defendant raised the affirmative defense of failure to mitigate in a discharge or failure to hire case.

2.     As to plaintiff's "duty to mitigate" damages in cases involving wrongful discharge, see generally *Zayre Corp. v. Creech*, 497 So. 2d 706, 708 (Fla. 4th DCA 1986); *Juvenile Diabetes Research Foundation v. Rierman*, 370 So. 2d 33, 36 (Fla. 3d DCA 1979); *Punkar v. King Plastic Corp.*, 290 So. 2d 505, 508 (Fla. 2d DCA 1974). This instruction does not use the term "duty to mitigate" because this is more accurately an application of the doctrine of avoidable consequences. See *System Components Corp. v. Fla. Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009).

3.     *Failure to Mitigate Lost Wages*. With respect to the defendant's burden on this defense, federal courts have held that if the defendant proves the claimant did not make a reasonable effort to seek out comparable employment, the defendant has met its burden on this defense without the need to prove that comparable employment was available to the claimant.  See *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527–28 (11th Cir. 1991); accord *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998); *Sellers v. Delgado Cmty. College*, 839 F.2d 1132, 1139 (5th Cir. 1988); *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1319 (D.C. Cir. 1972) (quoting *Am. Bottling Co.*, 116 NLRB 1303, 1307 (1956)).  No Florida appellate court has addressed this issue.  The committee takes no position on this issue, pending further development in Florida law.

### 417.11  AFFIRMATIVE DEFENSE — AFTER-ACQUIRED EVIDENCE

**As a defense to** (claimant's) **damages claim for** (defendant's) **decision to [discharge] [fail to hire] [**(describe discriminatory treatment)**]** (claimant)**,** (defendant) **claims that** (claimant) **engaged in wrongdoing or misconduct during [his] [her] [employment] [job application process], which was of such severity that if then known by** (defendant) **would have resulted in [his] [her] [discharge] [failure to be hired] [**(describe discriminatory treatment)**].**

**If the greater weight of the evidence supports** (defendant's) **claim that** (claimant) **engaged in wrongdoing or misconduct that** (defendant) **did not discover until after it [discharged] [failed to hire] [**(describe discriminatory treatment)**]** (claimant)**, you should reduce any damages for lost wages and benefits that you award to** (claimant) **and calculate the total amount of [his] [her] damages for lost wages and benefits from date of unlawful [discharge] [failure to hire] [**(describe discriminatory treatment)**] to the date** (defendant) **discovered the wrongdoing or misconduct.**

- 14 -

(Claimant's) **wrongful conduct must have been of such severity that [he] [she] in fact would have been [discharged] [not hired] [**(describe discriminatory treatment)**] on those grounds alone if** (defendant) **had known of it at the time of the [discharge] [failure to hire] [**(describe discriminatory treatment)**].**

**If, however, the greater weight of the evidence does not support** (defendant's) **claim that** (claimant) **engaged in wrongdoing or misconduct that was discovered after the [discharge] [failure to hire] [**(describe discriminatory treatment)**], then your verdict should be for** (claimant) **in the total amount of [his] [her] damages for lost wages and benefits.**

NOTES ON USE FOR 417.11

1.      The doctrine of after-acquired evidence was established by the Supreme Court in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995), a case that arose under the ADEA.  The after-acquired evidence defense also applies to claims under the FCRA.  See *Brown Distributing Co. of West Palm Beach v. Marcell*, 890 So. 2d 1227 (Fla. 4th DCA 2005) (finding that the trial court erred by not giving the defendant-employer's proposed jury instruction on after-acquired evidence, which was "a fair reading of the holding in *McKennon* and therefore appropriate as it accurately states the law and is necessary for the jury to properly resolve the issues of the case"); *Torres v. TPUSA, Inc.*, No. 2:08–cv–618–FtM–29DNF, 2009 WL 764466, at \*1–2 (M.D. Fla., March 19, 2009) (holding that the doctrine of after-acquired evidence can be a valid defense to a plaintiff's claims of damages for violations of the FCRA); *Neal v. Manpower Intern., Inc.*, No. 3:00–CV–277/LAC, 2001 WL 1923127, at \*14 (N.D. Fla., Sept. 17, 2001) (applying the after-acquired evidence defense to claims under the FCRA).

2.      The after-acquired evidence doctrine is a defense only to a claimant's damages claim; it has no bearing on liability.  After-acquired evidence should not be used to determine liability because "[t]he employer could not have been motivated by the knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."  *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). See also *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1021 (11th Cir. 2001).

3.      *Misconduct in job application process*. The Eleventh Circuit has held "that the after-acquired evidence rule announced in *McKennon* applies to cases in which the after-acquired evidence concerns the employee's misrepresentations in a job application or resume, as well as cases in which the after-acquired evidence

- 15 -

relates to employee wrongdoing during employment." *Wallace v. Dunn Const. Co., Inc.*, 62 F.3d 374, 379 (11th Cir. 1995). See also *Neal*, 2001 WL 1923127, at *14 (applying the after-acquired evidence defense where the plaintiff intentionally falsified her employment application); *Yeary v. Florida Dept. of Corrections*, No. 95-0583-CIV-J-21-C, 1997 WL 284648, at *3 (M.D. Fla., May. 13, 1997) (the after acquired evidence "doctrine is equally applicable to instances of misrepresentations and omissions by the employee in his or her job application").

4. *Reinstatement and front pay*. Where the after-acquired evidence defense would reduce a claimant's damages for lost wages and benefits, "neither reinstatement nor front pay is an appropriate remedy." *McKennon*, 513 U.S. at 362–363. See also *Kovelesky v. First Data Corp.*, 534 Fed. Appx. 811, 814 (11th Cir. 2013); *Wallace*, 62 F.3d at 380.

5. *Compensatory damages*. After-acquired evidence does not reduce or preclude an award of compensatory damages even where such evidence reduces or precludes back pay and reinstatement. *Crapp*, 242 F.3d at 1021 (holding that the court's decision to deny the plaintiff "backpay for a discriminatory termination and yet award him compensatory damages for that termination" was appropriate and consistent with *McKennon*). "Resolution of the [problem of after-acquired evidence] must give proper recognition to the fact that [unlawful discrimination] has occurred which must be deterred and compensated without undue infringement upon the employer's rights and prerogatives." *McKennon*, 513 U.S. at 362.

## 417.12  REDUCTION OF DAMAGES TO PRESENT VALUE

**Any amount of damages that you allow for wages and benefits to be lost in the future should be reduced to its present money value and only the present money value of those future economic damages should be included in your verdict.**

**The present money value of future economic damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate** (claimant) **for these losses as they are actually experienced in future years.**

NOTES ON USE FOR 417.12

- 16 -

1.     Front pay is an equitable remedy that does not include a right to jury determination. If the judge presents the issue to a jury with the other damages in 417.9, then this instruction should be given.

2.     Designing a standard instruction for reduction of damages to present value is complicated by the fact that there are several different methods used by economists and courts to arrive at a present value determination. Cf., *e.g.*, *Delta Air Lines, Inc. v. Ageloff*, 552 So. 2d 1089 (Fla. 1989); *Bould v. Touchette*, 349 So. 2d 1181 (Fla. 1977) (even without evidence, juries may consider effects of inflation); *Loftin v. Wilson*, 67 So. 2d 185 (Fla. 1953) (lost stream of income approach); *Renuart Lumber Yards v. Levine*, 49 So. 2d 97 (Fla. 1950) (using approach similar to calculation of cost of annuity); *Seaboard Coast Line R.R. Co. v. Garrison*, 336 So. 2d 423 (Fla. 2d DCA 1976) (discussing real interest rate discount method and inflation/market rate discount methods); see also *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983); *Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir. 1982); *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967) (total offset method).

3.     Until the Florida Supreme Court or the legislature adopts one approach to the exclusion of other methods of calculating present money value, the committee assumes that the present value of future economic damages is a finding to be made by the jury on the evidence; or, if the parties offer no evidence to control the finding, that the jury will properly resort to its own common knowledge and by argument. See *Seaboard Coast Line R.R. Co. v. Burdi*, 427 So. 2d 1048 (Fla. 3d DCA 1983).